## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

STEVEN MIZEL Individually and on behalf of
others similarly situated and STEVEN MIZEL and
PROVIDENT TRUST GROUP F/B/O STEVEN
MIZEL ROTH IRA, Derivatively on Behalf of
Consolidated Asset Funding 3 LP,

Case No.  19-10712

Plaintiffs,

**VERIFIED COMPLAINT**

vs.

UNIFIED CAPITAL PARTNERS 3 LLC., and
UNIFIED ASSET MANAGEMENT, LLC,

Defendants,

-and-

CONSOLIDATED ASSET FUNDING 3 LP,

Nominal Defendant.

-------------------------------------------------------------- X

Plaintiffs STEVEN MIZEL, individually and on behalf of others similarly situated, and

STEVEN MIZEL and PROVIDENT TRUST GROUP F/B/O STEVEN MIZEL ROTH IRA

("Plaintiffs") derivatively on behalf of Consolidated Asset Funding 3 LP, through their attorneys,

Gainey McKenna & Egleston, submit this Verified Complaint against Defendant Unified Capital

Partners 3 LLC, and allege upon information and belief as follows:

## THE PARTIES

1.      Plaintiff Steven Mizel ("Mizel") is a resident of the State of California.

2.      Steven Mizel is the beneficial owner of the Steven Mizel Roth IRA.

3.     Provident Trust Group F/B/O Steven Mizel Roth IRA ("Provident Trust") is a domestic business corporation duly organized and existing under the laws of the State of Nevada, with its principal place of business in the State of Nevada.

4.     Provident Trust is a limited partner in the limited partnership known as Consolidated Asset Funding 3 LP ("Consolidated"), acting in that capacity for the benefit of the Steven Mizel Roth IRA.

5.     Nominal defendant Consolidated is a limited partnership formed under the laws of the State of Delaware

6.     Defendant Unified Capital Partners 3 LLC ("UCP") is the General Partner of Consolidated and is a limited liability company formed under the laws of the State of Delaware.

7.     Defendant Unified Asset Management, LLC ("UAM"), is a limited liability company formed under the laws of the State of Delaware and an affiliated entity to UCP, General Partner of Consolidated.

8.     There is a Limited Partnership Agreement ("LP Agreement") between UPC, the General Partner on the one hand, and the Limited Partners, including Plaintiffs, on the other hand.

9.     The LP Agreement provides that suit must be brought in the instant court.

10.    This action is not a collusive one to confer jurisdiction that the instant court would otherwise lack.

**JURISDICTION AND VENUE**

11.    Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the claims asserted herein as the amount in controversy is in excess of $75,000.

12.    This Court has jurisdiction over each Defendant named herein because each Defendant has expressly agreed by contract that an action involving the subject matter of the

instant complaint should be maintained in this District.

13.     In addition, each Defendant is a legal entity that conducts business in and maintains operations in this District and in New York State and/or has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because: (i) the parties have agreed by contract that venue is proper in this District; (ii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iii) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## FACTS

15.     Section 10.1 of the LP Agreement provides that the Partnership shall dissolve on the third anniversary of the date of the Final Subsequent Closing (October 1, 2013) with two (2) permissible consecutive one (1) year extensions if the General Partner (UPC) determines that such extension is necessary or advisable for the orderly liquidation of the Partnership's Assets.

16.     Under the LP Agreement, the dissolution date is no later than October 1, 2018.

17.     Plaintiffs demanded that the UPC as General Partner dissolve the Partnership and liquidate and distribute the Partnership's assets.

18.     UPC as General Partner refused Plaintiff's demand and failed to dissolve the Partnership or to liquidate the Partnership's assets.

19.     There is no provision in the LP Agreement for further extensions of the term of the Partnership beyond October 1, 2018.

20.     Accordingly, UPC as the General Partner is in breach of the LP Agreement and its duties and obligations under the LP Agreement.

21.     In addition, the value of the Limited Partnership has declined significantly between October 10, 2018 (a date subsequent to the date in which dissolution should have occurred) and the present by an amount that exceeds $17 million.

22.     This decline is due to the wrongful conduct of Defendants as set forth herein and further demonstrates the inadvisability of the General Partner's failure to dissolve and liquidate Consolidated at the end of the Limited Partnership's term as provided in Section 10.1 of the LP Agreement.

23.     In addition, the LP Agreement provides in Section 7.2(a)(ii) that the Preferred Return to the Limited Partners is 15% per annum, compounded annually.

24.     The financial statements that Defendants UPC and UAM caused Consolidated to issue for the years ended December 31, 2017 and December 31, 2016, incorrectly state that the Preferred Return to the Limited Partners is 12% per annum, compounded annually, as opposed to the 15% Preferred Return provided for in the LP Agreement at Section 7.2(a)(ii).

25.     Plaintiffs have demanded that Defendants reform and correct the financial statements issued, to correctly state that the Preferred Return to the Limited Partners is 15% per annum.

26.     In the alternative, Plaintiffs demanded that Defendants cause the certified public accountancy firm retained by UPC as General Partner for Consolidated reform and correct the financial statements issued, to correctly state that the Preferred Return to the Limited Partners is 15% per annum.

27. Defendants have refused to reform and correct the financial statements of Consolidated either by themselves or by giving instructions to the public accountancy firm to do so.

28. Plaintiff previously demanded that Defendant UPC as General Partner of Consolidated notify the Limited Partners that (a) the General Partner failed to dissolve the Partnership on October 1, 2018 in accordance with the terms of the Partnership Agreement and (b) that the General Partner has thus far failed to correct or cause a correction of the misrepresentation in the Partnership's financial statement regarding the Preferred Return.

29. Defendant UPC has failed to act upon Plaintiffs' said demand.

30. Furthermore, Defendant UPC has caused Consolidated to enter into an Investment Management Agreement ("IM Agreement") with Defendant UAM.

31. The IM Agreement provides that Consolidated shall pay UAM as the Investment Manager for its services a Management Fee that shall equal two percent (2.0%) per annum of the Capital Commitments of each of the Limited Partners.

32. A Capital Commitment is defined in the LP Agreement means, with respect to any Partner, the dollar amount specified as such Partner's capital commitment in connection with such Partner's subscription(s) for Interests (as such amount may be adjusted pursuant to this Agreement), which amount shall be set forth on the books and records of the Partnership.

33. The IM Agreement further provides that after the Investment Period, the Management Fee payable to the Partnership shall equal 2.0% per annum of such Limited Partner's *pro rata* portion of the aggregate capital deployed in the Partnership at the start of the applicable month.

34.     The Investment Period is defined in the LP Agreement as the period beginning on the Initial Closing Date and ending on the earliest to occur of the following:

>   (a)     The Full Investment Date of the Partnership;
>
>   (b)     The twenty (20)-month anniversary of the final Subsequent Closing (or, if there are no Subsequent Closings, the twenty (20)-month anniversary of the Initial Closing Date; or
>
>   (c)     The date on which the General Partner terminates the Investment Period pursuant to Section 10.1(b).

35.     Capital Deployed is defined in the IM Agreement. The Partnership shall pay the Investment Manager a management fee ("Management Fee") for its services hereunder. During the Investment Period, the Management Fee payable by the Partnership shall equal two percent (2.0%) per annum of the Capital Commitments of each of the Limited Partners. After the Investment Period, the Management Fee payable by the Partnership shall equal 2.0% per annum of such Limited Partner's pro rata portion of the aggregate Capital Deployed in the Partnership at the start of the applicable month. "Capital Deployed" means, at any time, the amount of the aggregate Capital Contributions of all of the Partners that are deemed still to be invested in the Partnership for purposes of determining the Management Fee after the expiration of the Investment Period, which shall be equal to the amount calculated as follows: (i) the amount of all of the aggregate Capital Contributions of all of the Partners; reduced by (ii) the excess of: (x) all distributions to the Partners over (y) all profits and income of the Partnership attributable to any source.

36.     The IM Agreement provides that the Management Fee shall be payable monthly in advance, with initial payments due and payable on the Initial Closing Date.

37.     Accordingly, while Consolidated remains in operation and not dissolved and/or liquidated as required, Defendant UAM is receiving Management Fees to which it otherwise is not entitled to receive.

38.     Each Management Fee paid by Consolidated to Defendant UAM wrongfully reduces the value of each Limited Partner's holdings in Consolidated.

39.     Plaintiffs demanded that Defendant UPC cease paying the Management Fee from Consolidated to its affiliate, Defendant UAM, but Defendant UPC refused to do so, and continued to pay said Management Fee until, upon information and belief, June 30, 2019.

40.     Said Management fees must be reimbursed to Plaintiffs.

41.     Upon information and belief, Defendant UPC has claimed that it ceased paying the Management Fee from Consolidated to its affiliate, Defendant UAM, as of July 1, 2019.

42.     Defendants UPC and UAM also caused Consolidated to enter into a Servicing Agreement with Fund Holding, Inc. ("PFH"), a corporation organized and existing under the laws of the State of Delaware.

43.     Under the Servicing Agreement, PFH is entitled to receive as its sole compensation for the services rendered to Consolidated, an annual fee equal to (i) fifty percent (50%) of the management fees paid to the Investment Manager by Consolidated and (ii) fifty percent (50%) of the carried interest allocated to the General Partner by Consolidated in such fiscal year.  PFH shall receive payment of the aforementioned fee within ten (10) calendar days of receipt by the Investment Manager of the management fees and within ten (10) calendar days of receipt by the General Partner of the carried interest distributions.

44.     Each fee paid to PFH from Consolidated wrongfully reduces the value of each Limited Partner's holdings in Consolidated.

45.     Plaintiffs demanded that Defendant UPC cease paying fees to PFH from Consolidated under the Servicing Agreement, but Defendant UPC refused to do so, and has continued to pay said servicing fee to the present and, upon information and belief, intends to continue paying said servicing fee.

46.     Said servicing fees must be reimbursed to Plaintiffs.

47.     Plaintiffs hereby demand that the General Partner of the Limited Partnership immediately dissolve the Limited Partnership and liquidate the assets for the benefit of the Limited Partners.

48.     Plaintiffs further demand that the Company arrange for the issuance of amended financial statements and the notes thereto, accurately reflecting the 15% preferred rate of return to which the Limited Partners are entitled.

49.     Plaintiffs further demand that Defendant UPC as General Partner cease and desist from paying the Management Fee to Defendant UAM.

50.     Plaintiffs also further demand that Defendant UA, as an affiliate of Defendant UPC, cease and desist from receiving Management Fees.

51.     Plaintiffs also demand that Defendants notify the Limited Partners that the General Partner failed to dissolve the Partnership on October 1, 2018 in accordance with the terms of the Partnership Agreement and that the General Partner has thus far failed to correct the misrepresentation in the Partnership's financial statement regarding the Preferred Return.

52.     Plaintiffs also demand an accounting of the monies received, held and disbursed by Consolidated under the management of the Defendants.

53.     Plaintiffs also demand an accounting of all the business affairs of Consolidated as they occurred under the management of the Defendants.

8

54.     In certain respects, Plaintiffs have no adequate remedy at law.

## CLASS ACTION IN THE ALTERNATIVE

55.     In the alternative, Plaintiffs also bring this action as a class action, in the event that class action procedures are deemed necessary by the Court, pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(1) and/or (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class of persons similarly situated (the "Class"): All persons who were Limited Partners of Consolidated at any time from inception to the present ("Class Period") are members of the putative Class.   Excluded from the Class are Defendants and members of the Defendants' immediate families.

## FIRST CAUSE OF ACTION

## (Against Defendants For Breach of Contract)

56.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

57.     Plaintiffs as Limited Partner and UPC as General Partner entered into the LP Agreement.

58.     Plaintiffs either performed or communicated and expressed a complete willingness to perform all of their obligations under the LP Agreement, thereby fulfilling all of their contractual duties owed under the LP Agreement.

59.     Defendant UPC as General Partner of Consolidated has failed and refused to abide by the terms of the LP Agreement.

60.     Defendant UPC and General Partner of Consolidated has failed to meet its contractual duties owed to Plaintiffs and cease the operations of Consolidated, liquidate its assets and return all monies due to Plaintiff and the other Limited Partners.

61.     As a result of the foregoing breach, Defendant UPC is liable to Plaintiffs in an amount in excess of $17 million.

### SECOND CAUSE OF ACTION

### (Against Defendants for Breach of Fiduciary Duties)

62.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

63.     Defendants owe Consolidated fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed and owe Consolidated the highest obligation of good faith, fair dealing, loyalty, and due care.

64.     Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

65.     Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties and thus breached their fiduciary duties owed to Consolidated.

66.     Defendants had actual or constructive knowledge of the above wrongdoing, or acted with reckless disregard for the truth, in that they failed to properly bring the operations of Consolidated to a timely close.

67.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, Consolidated sustained significant monetary damages, as have each of the Limited Partners and Steven Mizel individually as the beneficial owner of the Steven Mizel Roth IRA.

68.     As a result of the misconduct alleged herein, Defendants are liable to restore to Consolidated the assets depleted by their wrongful conduct.

69.     As a result of the misconduct alleged herein, Defendants are liable to each of the Limited Partners and Steven Mizel individually as the beneficial owner of the Steven Mizel Roth

IRA.

70.     As a direct and proximate result of Defendants' breach of their fiduciary duties, Consolidated has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending this lawsuit, severe damage to the value of Consolidated's holdings, the waste of corporate assets, and reputational harm.

## THIRD CAUSE OF ACTION

### (Against Defendants for Waste of Corporate Assets)

71.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein

72.     The wrongful conduct alleged regarding the continued payment of fees under the IM Agreement and the Servicing Agreement was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to Consolidated, each of the Limited Partners and Steven Mizel individually as the beneficial owner of the Steven Mizel Roth IRA.

73.     As a result of the misconduct described above, Defendants wasted corporate assets by, *inter alia*: (i) paying fees to Defendant UAM, the affiliate of Defendant UPC; (ii) paying fees to PFH under the Serving Agreement.

74.     As a result of the waste of corporate assets, Defendants are liable to Consolidated and to each of the Limited Partners and Steven Mizel individually as the beneficial owner of the Steven Mizel Roth IRA.

## FOURTH CAUSE OF ACTION

### (Against Defendants For An Accounting)

11

75.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

76.    Plaintiffs as Limited Partner and UPC as General Partner entered into the LP Agreement.

77.    UPC as General Partner of Consolidated has failed and refused to account to Plaintiffs and the other Limited Partners for the business affairs and monies received, disbursed and held to this date by Consolidated.

78.    Plaintiffs have demanded such an accounting, but Defendants have refused to provide one.

79.    Plaintiffs are entitled to a declaration that Defendants owe Plaintiffs an accounting and that Defendants are required to provide said accounting to Plaintiffs.

80.    The breach of the LP Agreement by Defendant UPC had enabled Defendant UPC and its affiliate Defendant UAM to misappropriate money and assets of Consolidated, has enabled Defendants to fail and refuse to account for the above mentioned monies and other assets of Consolidated, has enabled said Defendant UPC  to refuse to account to Plaintiffs and Limited Partners for said actions and has enabled Defendant UPC to refuse to repay said assets and monies to Consolidated, Plaintiffs and the Limited Partners, all of which is also a breach of Defendant UPC's duties owed to Plaintiffs as a limited partner.

81.    By reason of the forgoing Defendant UPC should be compelled to account for the said assets of Consolidated wrongfully taken and appropriated by it, to the detriment of Plaintiffs, all in an amount to be determined at trial, but believed to be in excess of $17 million.

82.    Plaintiffs have no adequate remedy at law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment as follows:

A.      Determining that this action is a proper derivative action maintainable under law, that proper demand was made, and wrongfully refused by Defendants;

B.      In the alternative, determining that this action is a proper derivative action maintainable under law, and that demand is excused;

C.      In the alternative, determining that this action should proceed as a class action on behalf of the Limited Partners;

D.      Awarding, against all Defendants and in favor of Consolidated, Plaintiffs and/or all Limited Partners, the damages as a result of Defendants' breach of contract;

E.      Awarding, against all Defendants and in favor of Consolidated, Plaintiffs and/or all Limited Partners, the damages as a result of Defendants' breaches of their duties;

F.      Awarding damages to Consolidated and/or Plaintiffs and/or the Limited Partners in an amount determined based on the difference between the value of the Limited Partnership on the date that it should have been liquidated (October 1, 2018) and the eventual date of liquidation;

G.      Awarding damages to Consolidated and/or Plaintiffs and/or the Limited Partners in an amount determined based on the Management fees and servicing fees improperly collected after the date on which the Limited Partnership should have been liquidated (October 1, 2018) and the eventual date of liquidation;

H.      Directing Defendants on behalf of Consolidated to take all necessary actions to reform and correct the financial statements issued on behalf of Consolidated, to correctly state that the Preferred Return to the Limited Partners is 15% per annum.

I.      Directing Defendants to provide an accounting to Plaintiffs and the Limited Partners;

J.      Awarding to Plaintiffs the costs and disbursements of the action, including

reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

K.      Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 19, 2019

                                        **GAINEY McKENNA & EGLESTON**

                                        By:    */s/Thomas J. McKenna*
                                                Thomas J. McKenna
                                        Gregory M. Egleston
                                        440 Park Avenue South, 5th Floor
                                        New York, NY  10016
                                        Tel: (212) 983-1300
                                        Fax: (212) 983-0383
                                        E-mail: tjmckenna@gme-law.com
                                        E-mail: gegleston@gme-law.com

                                        ***Attorneys for Plaintiffs***

14

## ATTORNEY'S VERIFICATION

THOMAS J. McKENNA, an attorney duly admitted to practice in the Courts in the State of New York, does hereby affirm, pursuant to the penalties of perjury, the following:

I am the attorney of record for the plaintiffs in the above captioned matter and I have the foregoing Verified Complaint and know the contents thereof.  That the same is true to the affirmant's own knowledge, except where the allegations are made upon information and belief, and as to those matters affirmant believes them to be true.

Affirmant further states that the reason this Affirmation is being made by the affirmant and not by the plaintiffs themselves is that the plaintiffs do not reside or maintain their principal residence within the County in which the undersigned maintains his office.

Dated: New York, New York
       November 19, 2019


                                    */s/Thomas J. McKenna*
                                    **THOMAS J. McKENNA**