```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
STEVEN MIZEL ROTH IRA, derivatively
on behalf of Consolidated Asset
Funding 3 LP,
```

                                    **MEMORANDUM AND ORDER**

```
              Plaintiff,
```
                                     19 Civ. 10712 (NRB)

```
       - against –


UNIFIED CAPITAL PARTNERS 3 LLC and
UNIFIED ASSET MANAGEMENT, LLC,


              Defendants,


       - and –


CONSOLIDATED ASSET FUNDING 3 LP,


              Nominal Defendant.
------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


Plaintiff Steven Mizel Roth IRA is one of thirty-three Limited Partners in Consolidated Asset Funding 3 LLP (the "Partnership" or "CAF3"), an entity that was formed to pool investments into a fund (the "Fund") for litigation-related financing ventures.[1] Plaintiff brought this derivative suit against the Partnership's general partner, Unified Capital Partners 3 LLC ("UCP" or "General Partner"), and asset manager, Unified Asset Management, LLC ("UAM"), asserting four causes of action arising from defendants' alleged failure to dissolve the Partnership by the deadline set

---

[1] Capitalized terms not defined herein have the meanings set forth in the Partnership Agreement, ECF No. 56-6.

forth in the Partnership Agreement.[2]   Presently before the Court

are the parties' cross-motions for summary judgment on plaintiff's

remaining breach of contract claim.[3]   For the reasons explained

below, defendants' motion is granted in its entirety and

plaintiff's motion is denied.

## FACTUAL BACKGROUND

The pertinent facts, taken primarily from the parties' Rule

56.1 Statements, are as follows.[4]   Steven Mizel Roth IRA,

beneficially owned by Steven Mizel ("Mizel"), is an investor and

Limited Partner in the Partnership with an interest in the Fund

totaling approximately 3.31%.  Pl. SOF ¶¶ 2-3, 21.  Under the terms

of the Partnership Agreement, the Partnership went into effect on

October 1, 2013 and was scheduled to dissolve within three years,

---

[2] The four causes of action are for breach of contract, breach of fiduciary duties, waste of corporate assets, and an accounting.  See Verified Amended Complaint ("Amended Complaint") ¶¶ 65-91, ECF No. 25.

[3] Defendants also moved for summary judgment on plaintiff's claim for an accounting, which, as plaintiff has conceded, is not an independent cause of action but rather derivative of its other claims.  See Mizel Roth IRA v. Unified Capital Partners 3 LLC, No. 19 Civ. 10712 (NRB), 2021 WL 1164439, at *1 n.1 (S.D.N.Y. Mar. 25, 2021).

[4] Both parties submitted a Rule 56.1 Statement of Material Facts in support of their cross-motions for summary judgment.  See Def. Local Rule 56.1(a) Statement ("Def. SOF"), ECF No. 57; Pl. Local Rule 56.1(a) Statement ("Pl. SOF"), ECF No. 62.  Both parties also submitted responses to each other's 56.1 Statements.  See Pl. Resp. to Def. Local Rule 56.1(a) Statement ("Pl. Resp. SOF"), ECF No. 63; Def. Resp. to Pl. Local Rule 56.1(a) Statement ("Def. Resp. SOF"), ECF No. 66.  Where the Court relies on facts drawn from any of the 56.1 Statements, it has done so because the record evidence duly supports the statements, no rule of evidence bars admission, and the opposing party has not disputed the facts or has not done so with citations to admissible evidence.

provided that the General Partner could in its sole discretion extend the term of the Partnership for up to two consecutive one-year periods following the expiration of the initial term.  See Partnership Agreement Section 10.1.  As such, if the General Partner exercised its two optional extensions, the Partnership would terminate on October 1, 2018.  Any further extension of the Partnership term would have to occur by amendment.

On January 26, 2019, Mizel, on behalf of plaintiff, e-mailed Walter Klores and Ronald Carner, the managing members of the General Partner, to inquire about the wind-down of the Partnership. Def. SOF ¶ 23.  Klores and Carner replied that they were still "seeking opportunities to liquidate the portfolio at a price that benefits the investors" and would continue managing the portfolio in the interim.  Id. ¶ 24.  Thereafter, on June 27, 2019, plaintiff's counsel sent a formal demand letter to Klores and Carner, demanding that UCP immediately dissolve the Partnership and liquidate the Fund's assets.  Id. ¶¶ 25-26; see Decl. of Ernest Edward Badway in Support of Defendants' Motion for Summary Judgment ("Badway Decl."), Ex. 8 at 2-3, ECF No. 56.  UCP's counsel sent a reply letter to plaintiff on July 29, 2019, reiterating the General Partner's position and expressing its intent to extend the term of the Partnership through an amendment in order to maximize value

for the Fund.  Pl. SOF ¶¶ 13-14, 16; see Badway Decl., Ex. 9.  A draft solicitation disclosure and consent form were attached to the July 29 letter.  Id.  Plaintiff objected to the proposed amendment in a letter sent to the General Partner on August 2, 2019.  Pl. SOF ¶¶ 18-19; see Badway Decl., Ex. 10.

According to Klores' sworn testimony, on August 23, 2019, Klores instructed Lena Williams[5] to send an e-mail to the Limited Partners, informing them of the General Partner's intention to extend the term of the Fund.  See Badway Decl., Exs. 17-18. Plaintiff maintains that it never received the August 23 e-mail. Pl. SOF ¶ 34.  A copy of that correspondence is reproduced below:

**From:** lwilliams@lawcash.com
**Date:** August 23, 2019 at 11:08:23 AM EDT|
**To:** CAF3 investor (group)
**Subject: CAF3 extension**

Dear investor,
As you may know from previous correspondence we had hoped the CAF3 fund would have been closed out by now but the ballooning TransVaginal Mesh cases have caused a major delay. This mass tort which was originally thought to be about $700 million to a billion dollars is now up to some $8 billion vastly complicating the settlement process.

As your General Partners we have been seeking for some time to find a way to liquidate the Fund by selling the cases. However, any buyer wants to be assured of a significant profit and so is offering far less than we believe we can eventually collect. We continue to believe that the best course for investors is simply to wait until all the cases (primarily the TransVaginal Mesh one's) are settled. This approach will result in the best possible eventual return.

We formally will be extending the life of the fund until 2021.

Thank You Ron & Walter

---

[5] While Lena Williams had previously been referred to as Klores' administrative assistant, Klores clarified at his deposition that Williams did not formally occupy that role.  Rather, she was employed at an entity that serviced the Partnership's funds and worked in the same office as Klores.  Klores Dep. 18:5-9; 29:9-18; 58:11-17, ECF No. 56-17.

As of June 16, 2022, the Partnership was still in existence but was winding down.  See ECF No. 72.

### PROCEDURAL HISTORY

Plaintiff filed its original complaint on November 19, 2019. ECF No. 1.  After defendants filed a pre-motion letter seeking leave to file a motion to dismiss, plaintiff filed the Amended Complaint, asserting four causes of action arising from defendants' alleged failure to dissolve the Partnership by the deadline set forth in the Partnership Agreement.  ECF No. 25. Defendants then moved to dismiss the Amended Complaint in its entirety.  ECF No. 28.

With respect to plaintiff's contract claim, defendants argued that there was no breach because the General Partner had properly amended the Partnership Agreement to extend the dissolution date by securing approval of a Majority in Interest of the Limited Partners.  In support, defendants submitted a sworn declaration from Walter Klores (the "Klores Declaration"), ECF No. 35-1, which stated that Klores had provided the Limited Partners with notice and a voting form regarding a proposed amendment to the Partnership term.  Klores Decl. ¶ 8.  Klores also declared that he had instructed Lena Williams to send the aforementioned August 23, 2019 correspondence to the Limited Partners, that Mizel was the

-5-

only Limited Partner to object in writing to the proposed amendment, and that none of the other thirty-two Limited Partners have complained about the extension of the Partnership term. Klores Decl. ¶¶ 9-11.

In its opposition brief, plaintiff argued that the dissolution date had never been properly amended and thus expired on October 1, 2018. ECF No. 32. Addressing the Klores Declaration, plaintiff disputed the assertion that Klores provided notice of the proposed amendment to all the Limited Partners, explaining that the draft solicitation disclosure materials attached to the July 29 letter were sent only to plaintiff in a private communication. ECF No. 36. Plaintiff made no mention of the August 23 correspondence.

In a Memorandum and Order published on March 25, 2021, this Court granted in part and denied in part defendants' motion to dismiss, dismissing all of plaintiff's claims except for breach of contract and the derivative accounting claim. See Mizel Roth IRA v. Unified Capital Partners 3 LLC, No. 19 Civ. 10712 (NRB), 2021 WL 1164439 (S.D.N.Y. Mar. 25, 2021). As to breach of contract, the Court agreed with defendants' interpretation of the Partnership Agreement and concluded that "UCP had the authority to amend the dissolution date so long as (1) UCP tendered a written

proposed amendment to the limited partners, and (2) the limited partners representing a majority in interest either approved of the amendment or failed to raise an objection within 25 business days." Id. at *2.  However, the Court determined that "the issue of whether any amendment to extend the dissolution date satisfied those two conditions is a factual question that lies beyond the four corners of the Amended Complaint."  Id. at *3.  Thus, the Court denied defendants' motion to dismiss plaintiff's breach of contract and accounting claims.  Id.

Thereafter, on May 17, 2021, the Court held an initial pretrial conference to address the parties' proposed case management and scheduling order.  At the conference, the Court questioned the parties' need for a year-long discovery timeline given the narrowness of the remaining issues in the case.  The Court explained that if it was true, as Klores avowed in his Declaration, that all the Limited Partners received notice of the amendment and that plaintiff was the sole objector, defendants would prevail.  The Court advised that discovery should be geared entirely towards testing the veracity of the Klores Declaration. To that end, the Court suggested that plaintiff request relevant documents and depose Klores and a random sample of two or three Limited Partners.

On December 2, 2021, plaintiff filed a pre-motion letter seeking leave to file a motion for partial summary judgment on its breach of contract claim.  ECF No. 49.[6]  In a response letter dated December 7, 2021, defendants sought permission to cross-move for summary judgment.  ECF No. 50.  The Court granted the parties' requests, ECF No. 51, and briefing on the cross-motions was completed on April 22, 2022.

## LEGAL STANDARDS

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party has satisfied that burden, to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  The opposing party "may not merely rest on the allegations or denials of his pleading."  Id.; see Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere "scintilla of evidence" to defeat summary judgment) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252

---

[6] Plaintiff did not seek summary judgment with respect to its derivative accounting claim.

(1986)).  "The same standard[s] . . . appl[y] when," as here, "the court is faced with cross-motions for summary judgment.  Each party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is under consideration."  <u>Bell v. Pham</u>, No. 09 Civ. 1699 (PAC), 2011 WL 1142857, at *2 (S.D.N.Y. Mar. 24, 2011) (citing <u>Morales v. Quintel Entm't, Inc.</u>, 249 F.3d 115, 121 (2d Cir. 2001)).

## DISCUSSION

The survival of plaintiff's remaining claims turns on whether (1) there was a valid amendment extending the term of the Partnership, (2) the Limited Partners received notice of the proposed amendment, and (3) the Limited Partners representing a Majority in Interest approved the amendment or failed to raise an objection within 25 days.  Defendants answer each of these questions in the affirmative; plaintiff, in the negative.  The Court addresses each issue in turn.

1. <u>Amendment</u>

Defendants argue that the August 23, 2019 e-mail constitutes a valid amendment of the Partnership term.  Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Br.") at 10-11, ECF No. 55.  Plaintiff takes the opposite position, arguing that the August 23 e-mail is not a written instrument, is not signed, and does not specify the duration of the extension.

-9-

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Cross Motion for Partial Summary Judgment ("Pl. Br.") at 8-9, ECF No. 60.[7]

To ascertain the requirements for a valid amendment, the Court begins with the text of the Partnership Agreement. See 6 Del. C. § 17-302(f) ("If a partnership agreement provides for the manner in which it may be amended . . . it may be amended only in that manner or as otherwise permitted by law.").[8]  Section 14.1(a) of the Partnership Agreement states that the Agreement may be amended "only by a written instrument signed by the General Partner."  The Agreement does not define "written instrument."  However, Section 14.7 provides that "[a]ll notices, requests and other communications to any party hereunder shall be in writing

---

[7] Plaintiff also argues that defendants' reliance on the August 23 correspondence is inconsistent with their prior position.  See Pl. Br. at 11-12.  It is true that the Klores Declaration states that in July 2019, Klores issued a proposed amendment and consent form to the Limited Partners, which the Court understands to be a reference to the July 29 letter and disclosure materials attached thereto.  See Klores Decl. ¶¶ 7-8.  It has since been confirmed that those materials were sent to just one Limited Partner, plaintiff.  See Pl. SOF ¶ 13. As a result, Defendants do not rely on the July transmission as evidence of an amendment and notice, instead pointing to the other correspondence referenced in the Klores Declaration, which was in fact directed to all of the Limited Partners — the August 23 correspondence.  See Klores Decl. ¶ 9.  Although plaintiff argues otherwise, there is nothing inconsistent about defendants' position or the statements in the Klores Declaration.  The discovery process revealed details about what was transmitted to whom and when, which is precisely what discovery is meant to do.  Any suggestion by plaintiff to the contrary is flatly rejected.

[8] As explained in our March 2021 Order, plaintiff's claims are governed by Delaware law.  See 2021 WL 1164439 at *1 n.2.

(including electronic means or similar writing)."  It is thus clear the parties contemplated that an electronic transmission could constitute a written document.  See Salamone v. Gorman, 106 A.3d 354, 368 (Del. 2014) ("When interpreting a contract, this Court will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions.") (internal quotation marks and citation omitted).  There is nothing in the Agreement that indicates amendments are to be treated any differently. Accordingly, the Court concludes that an e-mail correspondence can constitute a "written instrument" for the purposes of effectuating an amendment under the Partnership Agreement.  See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (concluding "written agreement" as used in Fed. R. Civ. P. 10(c) encompasses e-mails); Black's Law Dictionary (11th ed. 2019) (defining "writing" as "any intentional recording of words in a visual form . . . includ[ing] hard-copy documents, electronic documents on computer media, audio and videotapes, e-mails, and any other media on which words can be recorded").

As to whether the e-mail is "signed," the federal Electronic Signatures in Global and National Commerce Act ("E-SIGN Act"), enacted in 2000, states that "a signature . . . may not be denied

legal effect . . . solely because it is in electronic form."   15 U.S.C. § 7001(a)(1).[9]  Echoing the E-SIGN Act, section 17-113(a)(2) of the Delaware Revised Uniform Limited Partnership Act ("DRULPA") states that whenever a "partnership agreement requires or permits a signature, the signature may be . . . [an] electronic signature." 6 Del. C. § 17-113(a)(2).  Both the E-SIGN Act and DRULPA define "electronic signature" as an electronic symbol or process, attached to or logically associated with a document, and executed or adopted by a person with the intent to sign the document.  See 15 U.S.C. § 7006(5); 6 Del. C. § 17-113(a)(2).

When faced with the question of whether a particular moniker constitutes a valid signature under the E-SIGN Act and in other contexts, courts emphasize substance over form, focusing on the intent of the would-be signer.  See E. Edgar Wood, Inc. v. Clark, No. Civ. A. 883-K, 1986 WL 1160, at *4 (Del. Ch. Jan. 21, 1986) ("[T]he law does not require that a signature be made in any particular manner, if the intention is to sign it."); see also Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 129 (3d Cir. 1997) ("Any mark or symbol—including a typewritten name—will be deemed to constitute a signature for the purposes of the statute [of frauds] if it is used with the declared or apparent intent to

---

[9] The E-SIGN Act preempts inconsistent state law.  15 U.S.C § 7002(a).

authenticate the memorandum."); <u>Nucap Indus., Inc. v. Robert Bosch</u> <u>LLC</u>, 273 F. Supp. 3d 986, 998 (N.D. Il. 2017) ("Given [the ESIGN Act], a reasonable fact finder could conclude that the names . . . affixed to the bottom of the e-mail messages satisfied the signature requirement."); <u>Cranston/BVT Assocs., Ltd. P'Ship v.</u> <u>Sleepy's LLC</u>, No. C.A. 13-594 S, 2015 WL 5793693, at *2 (D.R.I. Sept. 30, 2015) ("[S]o long as a party intends to sign an email with his or her signature, a typed name on an electronic document suffices as a signature."); <u>Hamdi Halal Market LLC v. United</u> <u>States</u>, 947 F. Supp. 2d 159, 164 (D. Mass. 2013) ("Requiring a specific method of a mark would focus on form instead of function, logic which flies in the face of case law. The law demands only demonstration of a person's intent to authenticate a document as her own in order for the document to be signed. Many symbols may demonstrate this intent.").

Here, the August 23 e-mail concludes with the phrase "Thank you, Ron & Walter."  Klores provided sworn testimony averring that he had composed the e-mail message and instructed Williams to send it to the Limited Partners on his and Carner's behalf. <u>See</u> Klores Dep. 31:10-14; Klores Decl. at ¶ 9.  Consistent with this representation, the e-mail speaks in the plural using "we" and refers to the senders in third person as "your General Partners."

In rebuttal, plaintiff merely states that the August 23 e-mail is "unsigned." Pl. Br. at 8. Such an unsubstantiated assertion is insufficient to create a genuine issue of fact with respect to Klores' intent to sign the e-mail. See Barton v. Unity Health Sys., 768 F. App'x 83, 84 (2d Cir. 2019) (explaining a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"). Accordingly, the Court holds that no reasonable jury could conclude that the August 23 email was unsigned.

Finally, the Court rejects plaintiff's argument that the August 23 e-mail is not a valid amendment because it does not specify the duration of the extension. To the contrary, the e-mail states that the Fund will be extended "until 2021." That language connotes an outside date of December 31, 2021. While there may have been room for additional details and greater formality, the e-mail contained the most pertinent facts. It explained why there was a delay in dissolving the Partnership, addressed the efforts made to try to liquidate the Fund, and noted the General Partner's view that the best course of action is to wait until the pending lawsuits are settled. In light of the foregoing, the Court concludes that the August 23 e-mail constituted a valid amendment of the Partnership term. See In re

Cencom Cable Income Partners, L.P., No. C.A. 14634, 2000 WL 130629, at *6 (Del. Ch. Jan. 27, 2000) ("Unless prevented by some positive and mandatory law, equity regards substance rather than form.").

  2. Notice

    The second issue, notice, involves two inquiries, one factual and one legal.  The factual inquiry is whether the e-mail was sent to the Limited Partners.  If so, the legal inquiry is whether the e-mail, by itself, constitutes notice of the proposed amendment. As explained above, Walter Klores stated in his sworn Declaration that he instructed Lena Williams to send the August 23 e-mail to the Limited Partners.  See Klores Decl. ¶ 9.  During his deposition, Klores acknowledged that he could not say with 100% certainty that Williams did in fact send the e-mail, but he explained that he "sent the e-mail over to [Williams] and asked her to send it out. And she had never failed us before in doing it. There's no reason I could ever think that she wouldn't have done it."  Klores Dep. 31:7-17.  Defendants have submitted a copy of the e-mail, reproduced above, which is date and time stamped, and which lists in the "To" line an e-mail group composed of the Limited Partners' e-mail addresses.  See Badway Decl., Ex. 14; Klores Dep. 68:18-69:6 (explaining that the "CAF3 investor (group)" name listed in the "To" line of the e-mail contains the e-mail addresses for the Limited Partners).

-15-

In rebuttal, plaintiff states only that it did not receive the August 23 e-mail.  See Decl. of Steven Mizel ¶ 4, ECF No. 36-1.  Plaintiff does not challenge the authenticity of the copy of the e-mail submitted to the Court, nor does it identify a single other Limited Partner who also disclaims receiving the e-mail. The Court expressly gave plaintiff the opportunity to obtain discovery from other Limited Partners, providing a clear roadmap for how plaintiff could seek to discredit Klores' representations. Plaintiff failed to do so, despite spending more than six months conducting fact discovery before moving for summary judgment.  See Plaintiff's June 9, 2021 Letter, ECF No. 71 (informing the Court that it is not offering any evidence from any other Limited Partner in connection with this motion).  In light of Klores' sworn Declaration and deposition testimony and the unchallenged, time-stamped copy of the e-mail, and given plaintiff's failure to obtain contrary evidence, plaintiff's bald assertion that it did not receive the August 23 e-mail is insufficient to raise a triable issue of fact.  See Anderson, 477 U.S. at 249-50 ("If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).  Accordingly, the Court credits the statements in the Klores Declaration and finds that there is no

-16-

genuine dispute that the August 23, 2019 e-mail was in fact sent
to the Limited Partners.

Turning to whether the e-mail constitutes notice, the Court
again begins with the Partnership Agreement.  As noted above,
Section 14.7(a) provides that notices shall be in writing,
"including electronic means or similar writing[,] and shall be
given . . . to a Limited Partner at its address or electronic mail
address . . . ."  The August 23 e-mail was an electronic writing
sent to the Limited Partners.  Plaintiff offers no evidence
disputing that fact.  Furthermore, the subject of the e-mail is
"CAF3 extension," and the message itself pertains solely to the
duration of the Partnership.  The e-mail explains the cause of the
delay in liquidating the Fund and expresses the General Partners'
view that "the best course for investors is simply to wait until
all the cases . . . are settled."  It concludes by stating, "[w]e
formally will be extending the life of the fund until 2021."  Read
as a whole, the e-mail clearly alerts the Limited Partners to the
extension of the Partnership term, and any Limited Partner that
opposed such extension reasonably should have known to respond to
the message stating its disapproval.

Nowhere in this or any other section of the Partnership
Agreement does it say that a ballot or consent form must be

supplied, or that the Limited Partners must be expressly reminded of their right to approve or disapprove of a matter, in order to effectuate an amendment.  Accordingly, while at one point the General Partner may have contemplated the use of such materials in connection with the proposed amendment, as evidenced by the draft consent form submitted to plaintiff alongside the July 29, 2019 correspondence, no such formality was required.

   3. Approval

   Last is the issue of whether the amendment was approved. Under Section 14.1(a) of the Partnership Agreement, the Agreement may be amended "by the General Partner with the approval of a Majority in Interest" of the Limited Partners.  Section 14.1(c) further provides that "any Limited Partner which fails to respond to a notice of a proposed amendment within twenty-five (25) Business Days after notice of such amendment is given to all Limited Partners as set forth herein shall be deemed to have consented to such amendment."  For the reasons explained above, the Court credits the unrebutted statements in the Klores Declaration that none of the Limited Partners other than plaintiff objected to the proposed extension of the Partnership term.  Since plaintiff's interest in the Partnership totals less than 4%, plaintiff's sole objection is insufficient to defeat the amendment.  What is more, in the two-and-a-half years since this

-18-

lawsuit was commenced, no other Limited Partner has come forward to echo plaintiff's objection about the extended duration of the Partnership.   Accordingly, the Court concludes that the Limited Partners received notice of a proposed amendment to the Partnership term and a Majority in Interest of the Limited Partners consented, thus ratifying the amendment.

### CONCLUSION

For the foregoing reasons, plaintiff has failed to establish that defendants breached the Partnership Agreement and no material fact is genuinely in dispute.[10]   Defendants' motion for summary judgment is granted in its entirety and plaintiff's motion is denied.   The Clerk of Court is respectfully directed to terminate the motions pending at ECF No. 54 and 59 and to close the case.[11]

**SO ORDERED.**

Dated:   New York, New York
        August 15, 2022

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[10] Because plaintiff's breach of contract claim fails, so too must its derivative claim for an accounting.  See Menacker v. Overture, L.L.C., No. 2019-0762-JTL, 2020 WL 4463438, at *9 (Del. Ch. Aug. 4, 2020) (stating an accounting "is an equitable remedy rather than a cause of action," so plaintiff's "entitlement to an accounting . . . depends on the outcome of [its] substantive claims") (citation omitted).

[11] Defendants requested oral argument on these motions.  Because defendants were the only ones to do so and the Court is ruling in their favor, and given the narrowness of the matters at issue and the Court's considerable involvement in this litigation already, defendants' request for oral argument is denied.